WINSTON *VS.* MOFFET.

1. A special plea, setting forth that the deed sued on was not the deed of the defendant, because, at the time of its execution, he was a lunatic,—not verified by affidavit, is bad on demurrer.

2. Matters purely discretionary with the court below, do not admit of review.

3. An inquisition of lunacy was found against Winston, and being made known to the court, his guardians were permitted to come in and defend. The inquisition being afterwards set aside, and Winston restored to the management of his estate, the order appointing the guardians of the lunatic to defend, was discharged. Held, that as Winston afterwards appeared by attorney, no process was necessary to bring him into court, and that the irregularity, if any existed, was waived by his appearance.

Error to the Circuit court of Sumter.

Covenant—before *P. Martin*, J.

The facts of this case, so far as it is considered necessary to state them, are, that the action was commenced in the court below, by the present defendant, against the plaintiff, and the writ returned, executed. At the return term, it being suggested to the court, that an inquisition of lunacy had been found against the defendant below, and that William O. Winston and William Elliott had been appointed his guardians,—the court, on their motion, appointed them parties defendant to the suit. The cause was continued for several terms, and it being made known to the court, that the inquisition of lunacy had been set aside and vacated, and the defendant admitted

Winston *vs*. Moffet.

to the management of his business and estate, the order appointing William O. Winston and William Elliott to defend the suit, was set aside, and the cause continued.

At another term of the court, the record states, that John Erwin and William M. Murphy, esquires, attorneys of the court, suggested, and insisted that the defendant, Anthony Winston, had not been legally and regularly brought into court; and that the cause did not, and could not, stand for trial as to the said Anthony Winston;—which motion the court overruled, and thereupon the said Erwin and Murphy appeared, and announced themselves the counsel for the said Anthony Winston, and announced themselves ready for trial; and the demurrer of the defendant to the first count of the declaration being sustained, the defendant pleaded to the second count, the plea of payment, and a plea of *non est factum*, which is in these words: "And the said Anthony Winston, by attorney, comes and defends the wrong and injury, when, &c. and says that the said agreement or mutual covenant, in the said second count of the said declaration of the said Elihu Moffet contained and set forth, is not his deed, because he says that at the time the same was executed, signed, sealed and delivered, to wit, on the 7th November, 1835, he, the said Anthony Winston, was a lunatic, and of unsound mind, memory and discretion, to wit, at the county aforesaid; and of this he, the said Anthony Winston, puts himself upon the country."

- The plaintiff below took issue on the plea of payment, and demurred to the special plea, which demurrer was sustained by the court, and leave given to the defendant

to plead over to the merits of the action. The defendant then tendered a plea of lunacy, which being objected to by the plaintiff's counsel, on the ground of surprise, after the trial had commenced, the court refused the defendant leave to file the same.

There was a verdict and judgment for the plaintiff below, from which the defendant prosecutes a writ of error to this court.

*Hopkins*, for plaintiff in error.
*Gayle*, contra.

ORMOND, J.—The view we take of this case, will render it unnecessary to consider many of the questions which were argued at the bar. We are relieved from the necessity of considering the propriety of the judgment of the court below, that the defendant was in court after the discharge of the order appointing his guardians to conduct the cause during his lunacy, without any further process or act of the court to bring him in, as his subsequent appearance by attorney, was a waiver of the irregularity, if any existed. An appearance would cure a discontinuance, or supersede the necessity of showing that a writ had issued, it must, *a fortiori*, be sufficient, where the party is regularly in court, and his capacity to act been suspended for a limited period. It could not be tolerated, that a party should appear, litigate his rights before the court, and afterwards insist that he was not in court. The distinction which the learned counsel for the plaintiff attempted to draw between an appearance, after a defective service, or without service

Winston *vs.* Moffet:

of process by a ministerial officer, and an appearance su-
perinduced by a wrong judgment of a court, does not
appear to us to be sound—the principle, in both cases,
appear to be the same.    In either case, he is under no
legal obligation to act, but may rest securely on his
rights; or he may waive his privilege and consent to a
litigation of the matters in controversy.    If he do so, he
cannot afterwards be permitted to say the court had no
power to do the act which he voluntarily submitted to
its judgment.

We come next to the consideration of the judgment
on the demurrer to the plea of the defendant.    No other
objection has been made to the plea, but that it is not ve-
rified by the oath of the party.    In answer to this objec-
tion, it is insisted by the plaintiff's counsel, that a plea
denying the validity of a deed, from the lunacy of the
maker of the deed, is not within the statute requiring
pleas of *non est factum* to be verified by the oath of the
party, but that the statute is confined to cases where the
execution of the instrument is denied, which, by the plea
in this case, it is said, is distinctly admitted; and that
the allegation in the plea, that it is not his deed, is mere-
ly the conclusion of law, from the fact of lunacy previ-
ously alleged.

As lunacy may be given in evidence, under a plea of
*non est factum*, it would seem to follow, that merely re-
citing in the plea, the reason why the deed was not the
act of the defendant, could not change the character of
the plea.    But can effect be given to the law requiring
the plea of *non est factum* to be sworn to, without re-
quiring an affidavit of the truth of such a plea as the

9 P                    66

present, and many others, that might be supposed of a kindred nature?

A construction, that the Legislature merely intended to dispense with proof of the execution of the deed, would confine the law within narrow limits. It would not include the case of a deed, alleged by plea to have been delivered as an escrow—obtained by duress, or executed by an agent, if the statute can be evaded by pleading specially the facts which, if true, would render the deed null. The mischief, in such cases, would be equally as great, and, in many instances, greater, than that supposed to be the one designed to be prevented. Thus, if the deed sought to be enforced, be made by an agent, the knowledge of such agency may rest solely in the breast of the defendant, and if the agent were dead, the party claiming under the deed, would be without remedy : so, in the case of lunacy, the lunacy might be simulated ; and if the plaintiff, in these and similar cases, can not apply through the statute, to the conscience of the defendant, he would be without redress. But it is argued, that it is absurd to suppose that a man should be required to swear that he had been a lunatic, as it cannot be presumed, that he could know what he did, or did not do, when deprived of reason. It was precisely by such reasoning as this, that the courts anciently held, that a man should not be allowed to stullify himself; yet the reasoning, and the rule founded on it, has long since been exploded. In all cases in which a plea is required to be sworn to, it may be done, by the person swearing, to the best of his knowledge and belief.

The view we are now taking, has been hitherto the

doctrine of this court, in cases analagous. It was first determined in Tindal vs. Bright, (Ala. Rep. 103,) which is adopted as a correct exposition of the statute. In the case of Martin vs. Dortch, (1 Stewart, 479,) Martin had been sued as administrator, and pleaded that one Huff (who professed to be the agent of Martin's intestate,) had no authority in writing under the hand and seal of the deceased to execute the instrument on which he was sued. The plea was not sworn to, and on demurrer, it was held bad. The court, in their opinion, after affirming the case of Tindall vs. Bright, say, "the defendant may, by special plea stating the circumstances, deny the legal effect or validity of the bond on which he is sued. To determine whether an administrator or executor is authorised to plead *non est factum,* generally or specially, without accompanying his plea with an affidavit of its truth, reference must be had to the statute, the language of which is found to be, that "no plea of *non est factum* shall be admitted to be pleaded, but when accompanied with an affidavit of its truth." "The statute contains no qualification as to persons, but applies to all pleas of that denomination." This, it is conceived, is an authority full in point, and shows very conclusively, that there is no difference, so far as the statute operates on the plea, between a special plea, which denies the validity of the instrument, by asserting facts, showing that the deed sued on, is not the deed of the party,—and the general plea of *non est factum;* and it would be strange, indeed, if there could be supposed to be a specific difference between two pleas, which could be sustained by precisely the same proof;—the demurrer was, therefore, correctly sustained.

It remains to enquire, whether the decision of the court, refusing to permit the plea of lunacy to be received, is such a matter as can be reviewed in this court.

It is conceded, that the court had a discretion to permit or refuse permission to the defendant below to plead over, but it is supposed, that having given his permission to plead over, his power over the subject was exhausted, and that he could not revoke the permission thus given. If this be so, it must constitute an exception to the general rule, that a judge may change, alter or revoke his judgments, at any time before the adjournment of court. No reason can be perceived, why this rule, which applies to the most solemn judgments of the court, should cease to be applicable, when applied to matters admitted to be purely discretionary. To the proper administration of justice, full discretion must be vested in the presiding judge, in many cases, to be exercised by him, to effectuate the great ends of justice. This discretion, from the nature of the thing, cannot be reviewed in an appellate court, but must be exercised by him, as the exigency of the case may demand, under the guarantee afforded against abuse, by his official oath and judicial station, in connection with the constitutional remedy against oppression and injustice.

Many cases may exist, in which it would be the duty of the presiding judge to revoke a permission which he had granted, and which he might, in the first instance, have refused; whether he acted judiciously or improperly in the case now before us, we have not the means of determining, nor would it be proper that we should express an opinion.

The following are cases in which this court has refused to interfere in matters purely discretionary—(Tate vs. Gilbert, 2 Porter, 386; see also Calloway vs. Dobson, 1 Brockenbrough's Rep. 119.)

There is no error in the record, and the judgment is affirmed.